## THE HATTIE PALMER.

### HAWKINS v. THE HATTIE PALMER.

(District Court, S. D. New York. October 22, 1894.)

SHIPPING—NONDELIVERY OF FREIGHT—CONVERSION.

The steamer H. P., making daily trips between New York and New Rochelle, took some barrels of freight for delivery at City Island. On touching there, no person being in readiness to receive the barrels as usual, or to pay freight, the steamer retained the goods on board, and sent word to the consignee, whose place of business was about 200 yards from the landing, to come for them the next day, which notice was received by the consignee. The next day, no one appearing, the goods were still retained on board, and on the following day the steamer was arrested on this libel for conversion. The wharf was not a safe place to leave the goods unattended, and the vessel was always ready to deliver the goods on payment of freight. *Held*, no conversion, and the libel dismissed, with costs.

This was a libel for the alleged conversion of goods which had been shipped upon the steamer Hattie Palmer.

George A. Black, for libelant.
Convers & Kirlin, for claimants.

BROWN, District Judge. There is not to my mind the least evidence of any conversion of the libelant's goods in this case. The dock where the Hattie Palmer landed at City Island was a private dock; it had no storehouse, and there was no convenience for storage. For heavy freight like that in question, the usage and practice had been for the libelant, the consignee, to be present to receive it, either himself, or by his employés with his own teams. In this instance he knew the goods were coming, but made no provision to receive them. They could not safely be left upon the wharf unguarded, and there was no person there to guard them. The Hattie Palmer, in a case like this, was under no obligation to provide a storehouse, or guard. Her only duty was to make reasonable provision for delivery, when the libelant was ready to receive the goods, and pay the freight. As there was no one ready and prepared for this on libelant's behalf—Mr. Ketchum, the expressman, having no such authority, and having refused to take them—the retention of the goods on board until the boat's return from New Rochelle the next noon was entirely reasonable, and the most economical and proper disposition that could be made of the goods. Word was sent to Mr. Hawkins to have some one present to take the goods on the steamer's return the next day from New Rochelle, and to pay the freight, which word Mr. Hawkins received that evening; but he again failed to have any person present to receive the goods, though his yard was but about 200 yards from the landing. They were, therefore, allowed to remain on board for still another day; and the next day Mr. Hawkins libeled the vessel, claiming a conversion, and caused her arrest at such a time as to prevent one of her regular trips.

The evidence leaves no doubt in my mind that the absence of Mr. Hawkins, and his failure to provide for the receipt of the goods as usual on both occasions, were willful; and that an occasion was sought by him for an arrest and detention of the vessel, with intent to injure her business. None of the cases cited by the libelant's counsel seem to me to have any relevancy to the present case.

The libel is dismissed, with costs; and if it were appropriate to such a case, I should charge the libelant with the special damages caused by his arrest and detention of the ship.